We'll hear counsel, but you're there, in Fross v. County of Allegheny. Don't tempt me. I don't need this. I didn't want it. May it please the Court. Your Honor, my name is Craig Marovitch. I'm here on behalf of Appellant County of Allegheny. In this case, the lower court found that the county's ordinance was preempted by state law. Mr. Marovitch, how much of the county is available under your ordinance for residents by a registered sex offender? Your Honor, I can't answer that question with a percentage. I would say simply that... Can you do it by acres, in some way? What percent, you know, what's available? Yes, and like I said, Your Honor, I can't answer that in percentage. I would say that much of the county is not available. I can answer it that way. Does a registered sex offender have a right to live somewhere? In the county, yes, ma'am. Your Honor, there is availability for the registered sex offender to live in Allegheny County under this ordinance. I know, but is there any place built that they could live in in that area? It looked to me like you were taking the areas where... No one can read your map, of course, in the appendix, but anyway, it looked like you were taking the areas most likely to have affordable housing, saying you can't live there. Well, Your Honor, I don't believe that that was by design. No? You mean it just happened by accident that you cut off the county from a place where a registered sex offender can live? Your Honor, it wasn't by design to say that we don't want people living here simply because of the acreage. The ordinance was specific to talk about the safety, the public welfare, and the children. Maybe they don't have a right to live anywhere, but you do think they have a right to live somewhere, right? Yes, and the ordinance does not preclude them from living in Allegheny County. But suppose, you know, this is, no one wants to get branded, you know, I'm all for sex offenders, you know, it's a very unpopular group, I understand that. But suppose something has to be done. Somebody's in prison, and under the regulations of the state parole board, they have to approve the residence if the person is released, as I understand it. And suppose he comes back, or she comes back, and says, well, I have a brother who's a police officer, and he has said that I can move into his place. Unfortunately, his place is 2,000 feet from a school, and they check with the police department, and the man has an impeccable reputation, the brother, and everybody swears by him. I gather that under this ordinance, if the parole board said, boy, this is really ideal, and by the way, I was once in a case where that happened. Yeah, we were in a case. Where there was a police officer who had, and I can't remember what it was, but who had somebody, a brother, or I guess a brother, who was in jail. Yeah. And got out. I can't remember what it was. I was in that case. You were in the case? OK. And the parole board is very frustrated, because we have an ideal setup, not 24-hour supervision, but a lot of supervision, and yet they can't do it, can they, even if they want to? Well, Your Honor, the parole board has many elements that it needs to look at when it's going to allow an inmate to go out on parole. And sometimes a residence restriction does occur. It's occurring even under the parole board, for instance, if there's a order concerning that particular inmate that they can't be near the victim. If, for instance, in that area. That's not our issue, then. It's not our issue, but it's an example of that the parole board runs into these problems, Your Honor, on other levels, not just simply because of this ordinance. But the briefs say that for people who can't find an appropriate place, they have to stay in jail. Is that right? Well, Your Honor, if the... The briefs say that there are instances in which that has happened. Yes, Your Honor, and that happens with parole. I believe that parolees would remain within the prison system. But, yes, if a parolee does not have an acceptable place to go under the parole board, then they cannot release them. And they have not released them on... How can that be consistent with statewide standards? One of the things that is pointed out to us is that there is, by Pennsylvania law, a requirement to establish by regulation uniform statewide standards. If the county of Allegheny decides, in effect, you know, we just don't want you here, how can the state, consistent with its own statutory mandate to have uniformity across the state, permit the county to do that? Your Honor, I was speaking on what a parole board is doing, and a parole board has different elements that it needs to address. This would just be a supplement, supplemental element to that. So they are still being able to go through their tests to see if an inmate is eligible for parole. Hold on, because I'm not sure I'm communicating. If the very same parolee who had a residence in, you know, some other county in western Pennsylvania, pick one, I don't know, or middle Pennsylvania, or the eastern district of Pennsylvania, any place else, Bucks County, said, okay, fine, you can go. But that same parole board said, well, we would release you in Allegheny, but we can't because of the Allegheny Ordinance. Hasn't the Allegheny Ordinance made the state parole system less than uniform? Your Honor, I don't believe that it's made it less than uniform simply because they're still able to administer and go through an elemental test. Yeah, but if one of the elements is, we would release you, but we can't because Allegheny County's got its own ordinance in place, the fact that they've got a checklist doesn't make it uniform. If they can't go through the checklist with the same level of discretion in each case, right? I mean, what you're, what you seem to be acknowledging, I think you have to acknowledge is, Allegheny County's ordinance cabins the discretion that the parole board has, doesn't it? They can't do things they would otherwise do because if they're going to comply with your ordinance, it impinges on their ability to do what they might do in another county. Isn't that just the way it would operate as a matter of fact? Well, Your Honor, I don't think that it cabins it to say that the person cannot be released into Allegheny County, since there are still opportunities to have the residence in Allegheny County. It's simply just another elemental fact that, for instance, I can't maybe move to, if I was a, I couldn't move to 8th Street if the victim lived on 8th Street. But I could move to 29th Street if the victim wasn't there, and that was one of the elemental factors. This is just adding another factor. Doesn't it have different distance requirements? In fact, under the state law, under Megan's law, an offender could live near an institution as long as notice were given, but under the Allegheny ordinance, they couldn't live within a certain distance or half a mile or something like that, right? It's a completely different criteria for whether you can or can't live near one of the designated institutions, isn't it? Well, yes, Your Honor, there's an added supplemental range there. There is a 2,000 or 2,500 feet restriction on that. One of the problems that, and that's actually in the ordinance, one of the problems that was occurring in Allegheny County was that the notice requirement wasn't being met and there were complaints concerning sex offenders being too close to the schools or the parks. So this ordinance attempted to address that issue. We're not suggesting that there might not be frustrations for people in looking at the operation of the current state law, and certainly every resident of Allegheny County has a right to petition the state government to see that the laws of the state are enforced and they have every good reason to want to see that the laws are enforced. But setting that aside, because that's not the issue in front of us, our only issue is looking at those two things side by side. Can they be said to coexist and still leave a uniform state system under the state law? Because if it's not uniform, would you acknowledge that that's a problem? Your Honor, yes, it certainly can be a problem if it's not uniform on that. This preemption, if I may, Your Honor, I think that the test here has to be a rational basis test and that can't be simply ignored or not favored for the county because we're coming into a preemption argument. I know that your time is up, but I do want to ask you about preemption, if my colleagues don't mind. The district court found the Allegheny County ordinance was preempted. Was that field preemption or conflict preemption? Your Honor, I'm pretty sure that that was conflict. You think it was conflict? Yes, Your Honor, and I did reserve some time. Yeah, we'll get you then on the rebuttal. But I can actually take a look at the lower court, and I believe I saw a quote that says that it is not ruling under field preemption. Okay. All right, thank you. Thank you, Your Honor. Okay, thanks. I know that we took up a lot of your time with our questions, but that's why people have a little argument. If we didn't say anything, ask anything, you'd all worry. Good morning, Your Honors. Good morning. My name is Donald Driscoll, and I'm here on behalf of the plaintiffs, the appellees before this court. Mr. Driscoll, could you answer the last question that I asked? Was the district court holding field preemption or conflict preemption? Your Honor, the court did not rule on field preemption. It simply recited the law. It did rule on conflict preemption. What provision of Megan's Law is it in conflict with? Well, Megan's Law is a subchapter of the sentencing code. Preemption is based on conflict not only with the sentencing code, including Megan's Law, but also with the Board of Probation and Parole Law. But that part of Megan's Law That's sort of field preemption, though. Oh, I agree, Your Honor. I believe that field preemption is made out here, which it's just that because field preemption has not been found by Pennsylvania appellate courts with any great frequency, it's easier for the court to rule on conflict preemption. I know. It's alcohol and banking and some other thing. Anthracite coal. But also the intermediate appellate court, the Commonwealth Court, found field preemption in the state gaming laws. What do you think it is? Do you think it's field preemption or conflict preemption? I certainly think it's all three. I think it's express preemption. Express preemption has been determined where the state has taken regulation of this subject matter onto itself and indicated that regulation in this area is to be exclusively at a uniform statewide level. We don't think it can be clearer that they have done that in this case. That was the case with liquor control. It was similar language that the legislature indicated that it is the Liquor Control Board that is to regulate liquor in Pennsylvania. We also think that field preemption applies here for a couple of reasons. One, because of the manifest need for statewide uniformity. Even if the legislature had not expressed its intent that there should be exclusive statewide supervision through regulation at the state level, the need for uniformity is manifest here. Both the court below and the highest courts of two other states have looked at this precise issue and determined that there is a manifest need for uniformity. Otherwise, the system is going to break down. It's just not workable. Mr. Driscoll, you were with the Pennsylvania Institutional Law Project, so you look at this broadly. Yes. Every time I get one of these cases, I have the basic question, what is the society supposed to do with sex offenders who apparently cannot be cured? What are we supposed to do with them? I mean, somebody could say keep them in jail forever, but we can't do that. Well, there are tools available these days. Primarily, it starts with individualized assessment, thorough investigation, evaluation, risk assessment, imposition of treatment, close monitoring. GPS is available now to law enforcement officials and also expressly to parole officers and probation officers. There is very severe deterrent if there is reoffense. If there is not reporting or if there is reoffense, there is a mandatory 25-year minimum sentence for a reoffense. The state goes through a process right now. It has a sexual offender assessment board made up of psychologists and criminal justice experts who do a close evaluation, not just at the time of sentencing, but again before release on parole. And there is a process to determine who is at risk or who presents a greater risk of offending. And in those instances, those who are trained to monitor and provide supervision are aware of that and set conditions appropriately. What do we do if we reverse in this case? Do we remand it to the district court to consider the federal issues? Yes, Your Honor. I know that you can't be faulted for not raising it in your motion because you did what the judge said. He wanted you to raise this one first. But it could have occurred to me that you could have raised the federal issues as an additional basis to affirm. Yes, and as a matter of fact, Your Honor, we did raise the federal issues in our motion for preliminary injunctive relief. But in this court, you did not raise them. That's correct, Your Honor. Well, he's the appellee. Yeah, but you could have raised them and said even though the district court didn't reach them, you could affirm on this basis because we've raised it in the district court. But you didn't, so that's okay. What are the federal issues? Due process? Equal protection, due process, ex post facto, and the Fair Housing Act. And we believe that there is authority that supports each of those. Do you think that if we certified this to the Pennsylvania – after all, it's a Pennsylvania issue. It's a Pennsylvania Supreme Court. We're just a federal court. And, in fact, I'm the only one of the panel who happens to live in Pennsylvania. I have grandchildren, so I worry about these things. Yes. Do you think the Pennsylvania Supreme Court would accept the certification? Your Honor, I can't answer that. I don't know what standards the Pennsylvania Supreme Court applies in accepting certification or not. I do believe that this case calls for affirmance because it is so clearly a matter of preemption as established by Pennsylvania appellate decisions. Yeah, but shouldn't Pennsylvania Supreme Court be the one to decide that? And why should the United States Court of Appeals for the Third Circuit say whether Pennsylvania law preempts Pennsylvania County's ordinance on a subject that's obviously of great moment to the residents of Allegheny County and the rest of Pennsylvania? That's correct, Your Honor. And I can only answer that by the jurisdiction that the federal courts have been given to accept supplemental jurisdiction and to rule on those issues that implicate state law. She has to leave supplemental jurisdiction if it's a constitutional issue. Right, but we have before us now is strictly the state law issue and a mechanism to allow the sovereign Commonwealth of Pennsylvania to deal with its own internal conflict of law if there is one, as you say. So why wouldn't it be right to let the Commonwealth take care of this problem itself? Your Honor, I do not think, I'm not disagreeing that it would be reasonable and appropriate for the Pennsylvania Supreme Court to rule on this. And the ordinance is enjoined right now, right? I mean, there's a status quo that means there's no problem with the delay while they consider certification and then decide the case because things are operating as you want them to now, correctly? Well, it is the case to an extent in Allegheny County. Unfortunately, and this is not directly before the court, these ordinances exist throughout the state. There's at least one other, there's a number of other matters where residency restriction are harming people presently. That's extra record, right? It is extra record. That is not before the court. What about New Jersey? Doesn't New Jersey have, didn't New Jersey act on this recently? Yes, Your Honor. The New Jersey Supreme Court, I believe it was in the spring, June, I think, affirmed the Superior Court of New Jersey in a very, very similar fact situation. Holding that the ordinance couldn't stand, right? That's correct. Suppose, you know what bothered me? This isn't a class action. It's Galloway Township. What bothered me was, well, we could say, yeah, we affirm it's preempted. Then the county could prosecute somebody for violating the ordinance, somebody who's not a plaintiff here. Then that person can say that it's preempted, and the county could say, well, we don't think it is, and it's a state issue. Then the state courts could say, that's very nice, federal court, but we have jurisdiction, and we're going to decide that it's not preempted. And you can't remove the criminal case. Younger would stop that. So, I mean, this case could still, we can't really put it to rest. Well, Your Honor, I believe that Allegheny County would pay very due respect to the ruling of this court and not proceed in that fashion, and I also believe that the Pennsylvania courts would pay a great deal of respect to this court. Of course, it's not the final determiner, but it has been given the opportunity and perhaps the responsibility to predict how the Pennsylvania Supreme Court would rule on this. I think if it was a close question, there may be more reason for that. But in this instance, because of the clarity of the decisions that have been rendered and the various reasons for conflict or for preemption in this case, including express preemption, the very language of the legislation, the need for uniformity, and also the specific conflicts that do exist. Let me ask you a question, Mr. Driscoll. You've said now twice that there's express preemption. I might be confused, but I thought express preemption was this kind of express. Hey, counties, butt out. You know, very direct, right, clear. You can't legislate or regulate in this area, period. It wasn't that the legislature talked about uniformity or anything like that. Express preemption means I expressly say you are preempted. Isn't that? Am I wrong about that? Your Honor, I thought that that was the case, too, because there is a recent ruling by the Pennsylvania Supreme Court, I think it was the Huntley decision, where it described express preemption as including where the legislature has more than simply said that this is to be a uniform and exclusive system, statewide system of regulation, but went the next step and said not only that, but municipalities or local political subdivisions are expressly prohibited from doing it. But past cases have not required that the legislature go to that length. Your Honor, just a couple of additional things in response. One of the most important things here and one of the bases for preemption is obstruction to the achievement of state objectives, purposes and objectives. And it's our position in this case, and I think it's pretty clear, that not only is there obstruction, but these objectives are actually undermined by the local legislation, not simply in terms of rehabilitation, reintegration. I'm sorry, Your Honor. I was going to ask you, Mr. Driscoll, if you could, you know Judge Slover asked at the start if there was some estimate of the percentage of the county that's left open, and Mr. Marovitch said that the county couldn't answer that, but do you have an estimation on that? Your Honor, our factual position going in, and it was not disputed, it was in our statement of undisputed facts, is that there is virtually no part of Allegheny County where a sex offender could reside unless they happen to have a family in a more remote area and a more affluent area. But the areas of Allegheny County that were left open generally are unbuildable hillside areas, industrially zoned, unaffordable areas. There's no rental housing. There's no transportation access. How much of the city of Pittsburgh is left open? There are some locations in the city of Pittsburgh, hillside locations in the city of Pittsburgh, that may be open. But one of the examples of how extreme this ordinance is,  was approved by his parole agent, moved into that home, put down a security deposit. This was after being forced to move from his family's home, moved into this home, and was told that he had to move again because across the Allegheny River there was a park. It would take much more than a half mile to get to that park, but because the ordinance is as the crow flies, he was notified that he had to move from that location. It's extreme. Tell us, just me maybe, what does the Pennsylvania Institutional Law Project do? Are you representing them? Yes. The Pennsylvania Institutional Law Project represents those who are institutionalized, primarily those who are in prisons and jails. In this instance, and again, this is not of record. No, but that's general knowledge. We can take judicial notice of it once you tell us. Yes. I've received many, many letters from persons in prisons who have been approved for parole who cannot get out of prison despite having gone through a vigorous assessment. Because of ordinances like this? Because of ordinances, yes, yes. And not only prisons, but jails and also halfway houses. Some who were able to get into what's called community correction centers were not able to get out of community correction centers because they couldn't get approved home plans. One of the named plaintiffs was in that situation, and it was only after the ordinance was suspended that that individual was able to move into a family residence that he had. But it's gotten more extreme now that individuals can't even get into the community correction centers because they clog the community correction centers because they can't transition then into the community. And it's clear here that if this ordinance did stay into effect, that surrounding counties, Beaver County, Butler County, whatever, surrounding counties would very soon realize that they're not going to accept sexual offenders. In Mallegany County. Has there been any movement in Philadelphia to get an ordinance like this? No, Your Honor. Not that I know of. Philadelphia County or city does not have this ordinance. Thank you. Thank you, Your Honor. Do you have any questions? Morty, any questions? Okay, thank you. Mr. Marovich? We cut off a lot of your time, so you have your rebuttal time. Thank you, Your Honor. Your Honor, if I may just address a few things. I recognize you have a hard position to take, but go ahead. Thank you, Your Honor. Judge Jordan, if I can address one thing that you brought up earlier on the express preemption. I agree with you, Your Honor, that this is not express preemption, and I don't believe that the lower court intended that to be its ruling. If it was express exemption, we would easily be able to turn to Megan's Law or the parole law and say, look, there it is. The county is wrong. Don't do it. But that's not the case here. But you said it was conflict preemption. What provision of Megan's Law, with what provision of Megan's Law does it conflict? Your Honor, yes, if I can. I'll address that to say that it is under conflict preemption from how the lower court addressed the issue. I do not believe that it is in conflict with Megan's Law or the parole law. So then you think it's really field preemption? No, Your Honor. It has to be one. It has to be one. If the district court said it was preempted, then it has to be one or the other. I think the distinction is there's no preemption. Certainly, Your Honor, and I agree with you. So if I can go across the board. Judge Jordan, I do not believe that it's express exemption, and the lower court, I do not believe, addressed that to say it is. And that is pretty clear because we could turn and say Megan's Law says this. Don't do it. Or the parole law says this. Don't do it. Judge Slavater, if I may address your question earlier and now, if it was implied or field. No, it is not implied or field based on the being there's limited fields. And I believe you said that before, Your Honor. It deals with alcoholic beverages, anthracite strip mining, and banking also. And I said that I could try, and I looked through the lower court opinion. On the lower court opinion, it's Frost v. County of Allegheny, 612 F. 651. At the bottom of page 654, the court wrote, implied or field preemption is very rare in Pennsylvania and is limited to areas not relevant to this case, such as alcoholic beverages, anthracite strip mining, and banking. So I believe that it's pretty clear that the lower court did not find field preemption. What is the position of the, you represent the County of Allegheny. Yes, Your Honor. What is the position of Allegheny County with respect to certification of this issue to the Pennsylvania Supreme Court? Well, Your Honor, based on this case going as far as it has, and the amount of time that this is taking with the court, and it being a ripe issue, I think that that would be appropriate in this case. That's what I would have said if I were you, too, at this point. And, Your Honor, as I've already said, I agree with you before, and I agree with you now. Is there anything else you'd like to tell us? No, Your Honor. Thank you very much. Thank you. It is troubling. The whole issue is a troubling one. It's a societal issue. Yes, I agree. I don't know that the court should decide it, but okay. Thank you. Thank you. We'll hear.